# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL PUGH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0587** |
| **WARDEN LADREYT** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual and Procedural Background

The petitioner, Daniel Pugh ("Pugh"), is a convicted inmate incarcerated in the Nelson Coleman Correctional Center in Killona, Louisiana.[2] On October 7, 2010, Pugh and a co-defendant, Brandie Pugh, were charged by bill of information in St. Charles Parish with possession of oxycodone.[3] The record does not reflect the disposition of the charge against Brandie Pugh.

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 1, Bill of Information, 10/7/10.

On December 10, 2010, Pugh entered a plea of no contest to the charge.[4] After waiver of delays, the Trial Court sentenced Pugh to the sentence recommended in a plea agreement of five years in the department of corrections, with credit for time served and which would run concurrently with a stipulated sentence on a revocation in another case.[5] The Court also recommended that Pugh be placed in the drug treatment program at Forcht-Wade Correctional Center near Shreveport, Louisiana. As part of the plea agreement, the State also agreed not to pursue a multiple bill on this conviction.[6]

On January 3, 2011, Pugh submitted to the Trial Court a motion to withdraw his guilty plea, or alternatively for appeal, and a motion to reconsider the sentence.[7] Pugh alleged in the motion to withdraw that he was misled into accepting the maximum sentence on the representation that his sentence would run concurrently with the revocation sentence in his other felony case. He argued, however, that under La. Code Crim. P. art. 901(C)(2), the authority to declare the sentences concurrent was only with the judge in the revocation not the judge who accepted this plea. He claims that the representation was made only to induce his plea. He also complained that he was not told that he would have to renew his sex offender registration upon his release. He also requested in that motion and the motion to reconsider that the court reduce his sentence based on the lack of aggravating circumstances and no violent or dishonest criminal history.

---

[4]St. Rec. Vol. 1 of 1, Guilty Plea and Sentence, 12/15/10; Plea Transcript, 12/10/10.

[5]St. Rec. Vol. 1 of 1, Plea Transcript, p. 7, 12/10/10. The other case involved his third DWI conviction for which he was on probation at the time of this offense. St. Rec. Vol. 1 of 1, Guilty Plea and Sentence, dated 12/15/10; Rec. Doc. No. 1.

[6]St. Rec. Vol. 1 of 1, Guilty Plea and Sentence, 12/15/10.

[7]St. Rec. Vol. 1of 1, Motion to Withdraw Plea/Appeal Conviction and Sentence, 1/7/11 (cover letter dated 1/3/11); Motion to Reconsider Sentence, 1/7/11 (cover letter and motion dated 1/3/11).

After receiving no ruling from the Trial Court, on February 25, 2011, Pugh submitted an application for writ of mandamus to the Louisiana Fifth Circuit Court of Appeal.[8] The Court granted the writ on March 17, 2011, for the limited purpose of ordering the Trial Court to rule on the motions within 30 days.[9]

The Trial Court denied Pugh's motions on April 13, 2011.[10] After reviewing the transcript and record, the Court found that the waiver of rights and plea were knowingly and intelligently made, and there was no basis to grant relief.

On June 15, 2011, the Louisiana Fifth Circuit denied Pugh's writ application seeking review of that order.[11] Pugh argued to that Court that: (1) the Trial Court was unaware of its own errors in imposing the sentence when it denied the motion to withdraw; (2) the Trial Court erred by not ordering a hearing; (3) the Trial Court erred in not addressing each of his arguments; and (4) the Trial Court erred by not granting the appeal. The Court resolved that Pugh did not show his entitlement to post-conviction relief from his plea, citing La. Code Crim. P. art. 930.2, or a hearing on his motions, citing La. Code Crim. P. art. 929. The Court further determined that because the time for filing an appeal had elapsed, Pugh was required to file an application for post-conviction relief requesting an out-of-time appeal, citing *State v. Counterman*, 475 So.2d 336 (La. 1985). The Court also noted that, in a supplement to his writ application, Pugh argued that the Trial Court erred

---

[8]St. Rec. Vol. 1 of 1, 5th Cir. Writ Application, 11-KH-225, 3/2/11 (dated 2/25/11).

[9]St. Rec. Vol. 1 of 1, 5th Cir. Order, 11-KH-225, 3/17/11.

[10]St. Rec. Vol. 1 of 1, Trial Court Order, 4/13/11.

[11]St. Rec. Vol. 1 of 1, 5th Cir. Order, 11-KH-520, 6/15/11. The record does not contain a copy of this writ application, and the Court finds that it is not necessary to resolve Pugh's federal petition. According to the order, the writ application was filed by the Louisiana Fifth Circuit on May 17, 2011, which was within the 30 day period allowed by the Trial Court. St. Rec. Vol. 1of 1, Notice of Intent to Seek Writs, 4/16/11; Trial Court Order, 4/28/11.

in failing to construe his motions as seeking "post-conviction habeas corpus." The Court held that Pugh was not entitled to such relief, citing *Stevens v. Stalder*, 995 So.2d 66 (La. App. 2d Cir. 2008).

Pugh submitted a writ application to the Louisiana Supreme Court, which included a motion for the Court to review his illegal sentence under La. Code Crim. P. art. 882(B)(2).[12] In the writ application, he argued that his plea was induced by the improper representation that the sentencing judge had the authority to grant him concurrent sentences. He also complained that his alternative request for an appeal went unaddressed. The Louisiana Supreme Court denied the application on April 13, 2012, without stated reasons.[13]

## II.    Federal Habeas Petition

On March 5, 2012, while his state court writ application was still pending, the clerk of this Court filed Pugh's petition for federal habeas corpus relief in which he raised four grounds for relief:[14] (1) the plea was involuntary, induced, and an absolute nullity where the sentencing judge had no authority to offer a concurrent sentence; (2) he was denied the right to appeal when the Trial Court failed to grant leave as an alternative relief; (3) he was denied due process by the legal and factual mistakes in the ruling by the state appellate court; and (4) the Louisiana Supreme Court refuses to rule on his writ application.

---

[12]St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Writ Application, 11-KH-1603, 7/18/11 (postmarked 7/14/11, dated 7/13/11).

[13]*State ex rel. Pugh v. State*, __ So.3d __, 2012 WL 1383258, at *1 (La. Apr. 13, 2012); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2011-KH-1603, 4/13/12.

[14]Rec. Doc. No. 1.

The State filed an answer in response to Pugh's petition arguing that he failed to exhaust state court remedies prior to filing this federal petition and that his substantive claims were raised prematurely.[15]

Pugh replied to the State's opposition reiterating that the concurrent sentence was part of his plea agreement.[16] He also contends that he was entitled to file this federal petition without full exhaustion when the Louisiana Supreme Court failed to timely address his writ application or specifically rule on his motion to correct the sentence submitted with the writ application.

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[17] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 29, 2012.[18] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[15] Rec. Doc. No. 7.

[16] Rec. Doc. No. 8.

[17] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[18] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Pugh's petition on March 5, 2012, when the filing fee was received. Pugh dated his signature on the form petition on February 29, 2012. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing to this Court. The fact that he paid the filing fee also does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State does not address or challenge the timeliness of the petition. The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[19] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). A review of the procedural history seems to indicate that the petition is timely filed, having been filed here before Pugh's conviction actually became final. Under Louisiana law, a defendant has 30 days after his sentencing to seek reconsideration of the sentence or move for leave to appeal. La. Code Crim. P. art. 914;[20] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)). Pugh pleaded guilty and was sentenced on December 10, 2010. He submitted his motion to reconsider the sentence and the motion to withdraw, including his request for leave to

---

[19]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

[20]Louisiana law requires a criminal defendant to move for leave to appeal within <u>30</u> days of the order or judgment that was being appealed or of a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1). Failure to move timely for appeal under Art. 914 renders the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

6

appeal, on January 3, 2011, and those motions were filed by the Trial Court on January 7, 2011. Either way, the motions appear to have been timely filed under Louisiana law.

State law also provides that, when a timely motion to reconsider the sentence is filed, the defendant has 30 days from ruling on that motion to move for appeal. La. Code Crim. P. art. 914(b)(2). Pugh sought review of the Trial Court's April 13, 2011, rulings on his post-trial motions, attempting to withdraw his plea, or obtain an appeal from the conviction, and to gain reconsideration of the sentence. *See* La. Code Crim. P. arts. 912.1(C)(1) and 930.6. With this perpetuation of his timely filed post-trial motions, it would appear that his conviction did not become final under state law until May 14, 2012, which was 30 days after the Louisiana Supreme Court denied his writ application. In other words, by this Court's assessment, Pugh presented his federal petition before his state court conviction and sentence were final. The petition *a fortiori* was not filed more than one year after finality.

Furthermore, as mentioned previously, the State's opposition was based on the fact that Pugh did not exhaust pending state court matters when he filed the instant federal petition. Since the filing of this federal petition, the Louisiana Supreme Court has ruled on Pugh's writ application. While the claims were not exhausted prior to filing, they are now ripe for consideration. In addition, because Pugh is not entitled to relief on his claims in this federal court, the Court can address the substance of the claims even when exhaustion is not complete. 28 U.S.C. § 2254(b)(2).

**IV.      Standards of Review of the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

7

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304

(1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V. <u>Involuntary Plea (Claim No. 1)</u>

Pugh alleges that his plea was somehow improperly induced, because the Trial Court was not the appropriate court under Louisiana law to impose the concurrent sentence that was made part of his plea bargain. He contends that, under La. Code Crim. P. art. 901(C), the decision as to whether a sentence on a new felony is to run concurrent with a revocation sentence is left to the judge imposing the revocation sentence, not the judge who renders the sentence on the new felony. He suggests that, since the Trial Court had no authority to impose a concurrent sentence, he was

improperly induced to rely on the expectation of a concurrent sentence when entering the no contest plea.

Under Louisiana law, a plea of nolo contendere, or no contest, has the same legal effect in a criminal proceeding as a plea of guilty. *State v. Peters*, 546 So.2d 829 (La. App. 1st Cir. 1989), *cert. denied*, 552 So.2d 378 (La. 1989). Similarly, under federal law, the law relating to guilty pleas applies to pleas of nolo contendere. *Matthew v. Johnson*, 201 F.3d 353, 360 n.9 (5th Cir. 2000) (citing *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990)).

The validity of a plea is a question of law. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)). "A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Thus, a prisoner generally may not "collaterally attack a voluntary and intelligent" plea. *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991). "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A plea therefore "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Amaya*, 111 F.3d at 389.

A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process .'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). A "plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

In the instant case, the record reflects that Pugh entered a plea of no contest based on an agreement reached with the State. The plea agreement included his decision to enter a plea of no contest with the following stipulations :[21] (1) he would receive credit for 75 days time served; (2) his sentence was "to run concurrent with <u>stipulated</u> revocation in Case No. 10-0465, Div. D. (DWI - 3rd) - 2 years DOC, with rec. for treatment @ Forcht Wade." (emphasis added); (3) for this charge, he would receive a recommendation for treatment at Forcht Wade substance abuse facility; and (4) the State would not pursue a multiple bill. In addition, Pugh also acknowledged his waiver of each of his constitutional rights, including his right to appeal.[22]

At the plea hearing, the Trial Court reiterated Pugh's waiver of each of his rights, including the right to appeal.[23] Pugh acknowledged the waiver of each of these rights.[24] The Trial Court also had the following exchange with Pugh:

---

[21] St. Rec. Vol. 1 of 1, Guilty Plea and Sentence, dated 12/15/10.

[22] *Id*.

[23] St. Rec. Vol. 1 of 1, Plea Transcript, pp. 4-6, 12/10/10.

[24] *Id*., p. 4.

11

THE COURT:
> And other than recommended sentence of five years department of corrections, concurrent with your current sentence, have you been promised anything, forced, threatened, or coerced into entering this guilty plea? Did anybody make you do this?

MR. PUGH:
> No, sir.

The record and circumstances surrounding the plea indicate that Pugh entered his no contest plea fully knowing that he was being recommended to a drug treatment facility, that he was not facing a multiple bill (already having three DWI offenses and at least one drug offense), and that he was to receive a concurrent sentence in this AND in the revocation proceeding. The record reflects that the revocation sentence of a concurrent two years in the other case was already "stipulated" to by the parties when he entered the plea in the instant case. The sentence in the other case was even memorialized and initialed on Pugh's plea form in this case. The record also shows that Pugh in fact received concurrent sentences by order of this sentencing court and the revocation court.[25]

By this record, Pugh knew when he entered his plea that he had a stipulation in the other case that the sentences were to run concurrently. Thus, there was no violation of La. Code Crim. P. art. 901(C) where the revoking court would be imposing the stipulated concurrent sentence, and he knew that at the time of this plea.

In other words, Pugh was not deceived or coerced by anything. Pugh's suggestion that he was coerced in this case, because the Trial Court agreed to impose a sentence the parties' had already negotiated for both courts is incongruous. What Pugh gained from his plea (or pleas) was the ability to avoid consecutive sentences and to avoid a multiple bill that could have exposed him

---

[25] St. Rec. Suppl. Vol. 1 of 1, DOC Master Record. This record clearly shows Pugh's concurrent sentences and the full term date of to be 9/24/2015

to a severe sentence, possibly even life imprisonment.  This was the impetus behind his plea, not some contrived suggestion that he was misled about the court's authority to agree to give him that which he has in fact received and desired from the plea.

Furthermore, Pugh clearly achieved the ultimate goal, a shorter stint in prison.  A guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant to avoid a possible longer sentence is not coerced.  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  Similarly, under Louisiana law, when a trial judge explains the possible penalties a defendant faces after trial and conviction by jury compared to that offered in a plea agreement, there is no inherent coerciveness.  *State v. Bouie*, 817 So.2d 48, 55 (La. 2002). The Louisiana Supreme Court has explained that the advice given by the trial judge in that instance concerns information that an accused should possess to enter a knowing and intelligent guilty plea.  *Id*.

Pugh has not shown that the state courts' denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court law.  He is not entitled to relief on this claim.

## VI. Denial of the Right to Appeal (Claim No. 2)

Pugh claims that he was denied the right to appeal, because the state courts did not specifically address his request for leave to appeal as alternative relief upon the denial of his motion to withdraw the guilty plea.  The record indicates that the Trial Court did not specifically address Pugh's request in its April 13, 2011, order denying the motions to withdraw and to reconsider the sentence.  Pugh challenged this failing in his subsequent writ application to the Louisiana Fifth Circuit.

13

The Louisiana Fifth Circuit noted that the period for seeking leave to appeal had expired, which was true by the time of its writing. The Court instructed Pugh to file an application for post-conviction relief to request an out-of-time appeal. Pugh did not do this. He instead sought further review from the Louisiana Supreme Court from the denial of his motions, which writ was denied without stated reasons.

A state prisoner seeking federal court review of his conviction pursuant to § 2254 must assert a violation of a federal constitutional right. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993). The United States Constitution does not generally mandate the right to appeal a criminal conviction. *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994) (citing *Griffin v. Illinois*, 351 U.S. 12, 19-21 (1956)). "The right to appeal a criminal conviction is a statutory right, not a constitutional right." *United States v. Henderson*, 72 F.3d 463, 464-65 (5th Cir. 1995) (citing *Abney v. United States*, 431 U.S. 651, 656 (1977)).

The Supreme Court has not recognized an independent federal constitutional right of direct appeal of a state conviction. *See*, *e.g.*, *Smith v. Robbins*, 528 U.S. 259, 270 n.5 (2000) ("The Constitution does not, however, require States to create appellate review in the first place."); *Ross v. Moffitt*, 417 U.S. 600, 606 (1974) ("[A] State is not obliged to provide any appeal at all for criminal defendants."). Any right to direct appeal of a conviction in the state courts must be created by state statute or state constitution. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).

Louisiana law provides: "No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." La. Const. art. I, § 19; *see also*, La. Code Crim. P. art. 912.1; *State v. Arceneaux*, 983 So.2d 148, 150 (La. App. 5th Cir. 2008) ("There is a constitutional right in

Louisiana to an appeal."). This right is to be exercised by the timely filing of a motion for leave to appeal where an appeal is allowed. La. Code Crim. P. arts. 912.1, 914. An appeal is only allowed from a conviction after jury trial. La. Code Crim. P. art. 912.1. All other matters are reviewable by writ of review with the court of appeal. *Id*.

Once a state creates the right to appeal a criminal conviction, the appeal process must comport with the guarantees of due process and equal protection. *Evitts*, 469 U.S. at 393, 403. Due process concerns are implicated when the state fails to assure a criminal defendant an adequate opportunity to present his claims and to obtain a final determination on the merits of the appeal. *Evitts*, 469 U.S. at 402, 405. Federal law requires that the right "not be abrogated or otherwise administered in a way which denies an appellant of the constitutional right to due process or equal protection." *Able v. Bacarisse*, 131 F.3d 1141, 1143 (5th Cir. 1998).

Federal courts recognize that the state-created right to appeal is a right that must be affirmatively exercised, or it is waived. *Norris v. Wainwright*, 588 F.2d 130, 137 (5th Cir. 1979); *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993). Federal courts do not require that waiver of a state right to appeal be knowing and voluntary in the same manner or at the same level as rights created by the United States Constitution itself. *Id*. ("If appellate review of a criminal conviction were a right given by the [United States] constitution, we would not allow a defendant to be precluded from appellate review unless he knowingly and voluntarily waived such review.") (emphasis added). Consequently, the waiver of the right to appeal requires only that there be a knowledge of the right to appeal and a failure to exercise that right. *Childs*, 995 F.2d at 69; *see also White v. Johnson*, 180 F.3d 648, 654 (5th Cir. 1999) ("a defendant may be held to have waived the

right to appeal upon a showing that the defendant was fully informed of his appellate rights and failed to make known his desire to exercise those rights").

In this case, Pugh had no right to appeal. His conviction was by plea not jury trial. Pugh also knowingly waived his right to appeal during the plea hearing. This was a right he gave up and later sought to somehow reinstate by raising his intent to appeal as alternative relief in his motion to withdraw. In accord with Louisiana law, as will be discussed in more detail, this was not a proper means to urge such a request.

When the request was reurged to the Louisiana Fifth Circuit several months later, Pugh was advised that his request was then untimely, and he was advised of the proper means for seeking leave to file an untimely appeal through application for post-conviction relief. Pugh chose to ignore that advice and never sought to file an application for post-conviction relief.

Questions concerning whether, when, and under what circumstances a criminal defendant may pursue an untimely appeal and post-conviction motions are purely matters of state law that will not suffice to support federal habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119 (1982). In Louisiana, as Pugh was advised, consideration of a request for an out-of-time appeal is made through the state post-conviction process. *See* La. Code Crim. P. arts. 924 *et seq*.; *State v. Counterman*, 475 So.2d at 339 (". . . the appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal, after the delay provided in Article 914 has expired, is an application for post conviction relief pursuant to Articles 924-930.7."). Pugh has apparently chosen not to exercise that option since no such application has been filed.

In addition, Louisiana law is clear that the determination of whether to grant an untimely, out-of-time appeal to a convicted inmate is broadly discretionary. *State v. Counterman*, 475 So.2d

16

at 340 (trial court may grant out-of-time appeal on post-conviction motion only "after due consideration of [numerous] factors"); *State v. Creel*, 450 So.2d 651, 653 (La. 1984) (only a timely-filed motion for appeal shall be granted; all others are discretionary); *State v. Munson*, 782 So.2d 17, 21 (La. App. 5th Cir. 2001) (appellate review of trial court's determination of post-conviction motion seeking out-of-time appeal reviewed under abuse of discretion standard); *State v. Wright*, 664 So.2d 712 (La. App. 3d Cir. 1995) (state trial court has discretion of either granting or denying motion for appeal). Thus, the State of Louisiana by its broadly discretionary statutes concerning out-of-time appeals of criminal convictions has not created a constitutionally protected due process interest. There is no constitutional issue before this Court arising from Pugh's claim.

In Pugh's case, the State has not done anything to prevent him from asking for an appeal in a procedurally proper manner. In fact, he was advised by the state appellate court that he could move to exercise that right through the filing of a post-conviction application, something he has not done according to the record before this Court. "A defendant properly informed of his appellate rights may not 'let the matter rest,' and then claim that he did not waive his right to appeal." (citations omitted) *Norris*, 588 F.2d at 137; *Childs*, 995 F.2d at 69.

For these reasons, Pugh has failed to present a cognizable constitutional issue or that he has been denied relief contrary to or by an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

### VII. Denial of Due Process (Claim Nos. 3 and 4)

Pugh raised general due process claims arising from what he described as legal and factual mistakes in the ruling by the state appellate court and by the Louisiana Supreme Court's failure to timely rule on his writ application. As an initial matter, this federal court does "not sit as [a] 'super'

17

state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors under state law). Review of the order issued by the Louisiana Fifth Circuit was for the Louisiana Supreme Court not this federal court.

Instead, this court's analysis focuses on due process considerations, and due process requires that the court grant habeas relief when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986). Pugh has presented no such error or denial of due process.

The errors complained of here by Pugh are no more than ministerial and irrelevant to the fairness of the plea proceedings. Nothing he complains of alters the fact that he has not presented here a violation of a constitutional right arising from his plea or sentencing.

For example, even if the Louisiana Fifth Circuit erred in finding his request for an appeal to have been untimely under state law, that error in interpreting state law is not reviewable here. *Swarthout*, 131 S. Ct. at 861. The claim also fails to present a denial of due process, since Pugh was provided with additional state court review and an alternative process for seeking an untimely appeal, something he has chosen to ignore. The Court's review of the record, and specifically that order, reveals nothing that rendered the state court proceedings fundamentally unfair or which rises to a violation of due process.

With respect to his suggestion, under a broad reading, that he was denied due process by the Louisiana Supreme Court, his claim is likewise meritless. The Louisiana Supreme Court ruled on his petition within what this tribunal knows to be typical delays for that court. Any delay in issuing

18

its ruling also had no bearing on any protected federal constitutional right or to habeas review in this Court.

Pugh has failed to demonstrate a due process violation or to establish that the state courts' rulings were contrary to or an unreasonable application of any federal law. He is not entitled to relief on this claim.

**VIII. Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Daniel Pugh's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[26]

New Orleans, Louisiana, this 14th day of June, 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[26]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.